In the Matter of the Estate of ELIZABETH M. BRONSON, Deceased.

WILBUR F. TREDWELL, Individually and as Executor of ELIZA-
BETH M. BRONSON, Deceased, Appellant; JAMES F. HIGGINS,
Respondent.

*Surrogate's Court — it cannot enforce an executory agreement by an executor to pay
a specified sum in compromise and satisfaction of a judgment recovered against his
testator — what compromise is not within chapter 100 of the Laws of 1893.*

Where an executor resists a proceeding in the Surogate's Court to compel him
to pay a judgment for $1,258.06, recovered against his testatrix, on the ground
that his testatrix had never been served with the summons, and the surrogate
adjourns the proceeding, pending an application by the executor to the Supreme
Court for relief from the judgment, and after the Supreme Court has ordered
a reference of the question as to the service of the summons, the judgment
creditor and the executor enter into an agreement, by which the judgment
creditor, in consideration of $500 to be paid to him by the executor, agrees to
release the estate from all liability on the judgment, and to execute an assign-
ment thereof to the executor and to discontinue an action pending in the
Supreme Court against him, the Surrogate's Court has no power, upon the
refusal of the executor to perform the agreement, to require the executor to
pay the $500 in satisfaction of the judgment.

An order of the Surrogate's Court to that effect cannot be sustained upon the
theory that the action of the executor in making the written agreement was a
compromise, pursuant to the authority of chapter 100 of the Laws of 1893.

APPEAL by Wilbur F. Tredwell, individually and as executor, etc.,
of Elizabeth M. Bronson, deceased, from an order of the Surrogate's
Court of the county of Kings, entered in said Surrogate's Court on
the 21st day of November, 1901, directing the said executor to pay
$500 in satisfaction of a judgment for $1,258.06 obtained against
his testatrix in her lifetime.

*Horace Graves* and *Wilbur F. Tredwell,* for the appellant.

*Rufus O. Catlin,* for the respondent.

JENKS, J.:

When the judgment creditor of the testatrix petitioned the Sur-
rogate's Court for a decree that his judgment be paid, and the
executor resisted upon the ground, *inter alia,* that she who was his
testatrix had never been served with the summons in the action, the

learned surrogate adjourned the proceeding, pending an application by the executor to the Supreme Court for relief from the judgment. Thereupon an application was made to the Special Term of the Supreme Court, which entered an order of reference towards the determination of the question of the service of the summons. Before any further proceedings were had in the Supreme Court the petitioner and the executor agreed in writing that the petitioner would release the estate from all liability on the judgment, would execute an assignment thereof to the executor and against the surviving partner of the testatrix, and would discontinue an action pending in the Supreme Court against the executor, all in consideration of the payment of $500 by the executor. Thereafter, upon proof of such agreement and allegation of tender of performance on the part of the petitioner, and of a refusal to perform on the part of the executor, the learned Surrogate's Court made an order which, in effect, directed the performance of this agreement. I think that the order should be reversed. The Surrogate's Court may decree the payment of a judgment against a testatrix or an intestate, though disputed or rejected by an executor or administrator. But it has no power to adjudicate upon the validity of a judgment upon equitable grounds. (*McNulty* v. *Hurd*, 72 N. Y. 518; *Matter of Randall*, 152 id. 508.) It, therefore, had no power in this case to determine whether there was a valid judgment by due process of law against the testatrix. Very properly the Surrogate's Court withheld decision upon the petition until the question raised by the executor could be settled by the Supreme Court. When the petitioner renewed his application, he did not seek the payment of a judgment, but the specific performance of a contract made by the executor. We cannot assume that the learned Surrogate's Court, after it decided to hold the original application in abeyance until the question of the validity of the judgment could be determined in the Supreme Court, and while that question was pending therein, made the order in question upon the theory that it was a decree for the payment of the judgment. Indeed, the order recites that " an agreement had been entered into between the said executor and the said James F. Higgins respecting the aforesaid judgment." A Surrogate's Court has no jurisdiction to decree the specific performance of a contract by an executor.

Nor do I think that this order can be affirmed upon the theory that the action of the executor in making the written agreement was a compromise pursuant to the authority of chapter 100 of the Laws of 1893 (amdg. Laws of 1847, chap. 80, § 1). While it is true that the executor outside of the court had agreed to a settlement of a "claim" of the plaintiff, yet we cannot say that he did not have a *locus penitentiæ* or that the agreement when brought before the court by the petitioner was tantamount to the procedure contemplated by that statute.

The order should be reversed, without costs.

All concurred.

Order of the Surrogate's Court of Kings county reversed and application denied, without costs.